(C. D. 489)

J. L. WARNER *v.* UNITED STATES

# United States Customs Court, Third Division

(Decided May 6, 1941)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph E. Weil* and *Richard F. Weeks*, special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; KEEFE, J., not participating.

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on certain flooring and panelled rooms covered by five entries of imported merchandise. Duty was assessed by the collector at the rate of 33⅓ per centum ad valorem as manufactures of wood under paragraph 412 of the Tariff Act of 1930 and the plaintiff claims that the merchandise is free of duty under paragraph 1811 as artistic antiquities produced prior to 1830.

The first witness called by the plaintiff was Mr. Jack L. Warner, the importer, who testified that when he purchased the merchandise he was building a new dwelling house in Beverly Hills, Calif.; that he visited Europe in 1936 and carried the plans of the house with him; that while in Paris, France, he saw a complete room set up in the place of business of S. Chalom, and also some flooring both of which he purchased; that he asked the firm to alter a section in the panelling to conform with a fireplace which he had in California, and before the merchandise was shipped the alteration was made. Two photographs of this room as installed in his home were admitted in evidence and marked "collective illustrative exhibit 1." The witness testified further that the merqueterie inlay flooring which he purchased was in the form of squares about 3½ by 3½ feet which fitted together like inlay and sufficient flooring was obtained to fit the areas in the entire first floor of his house.

The witness testified that next he visited London, England, where he saw some old panelled rooms in the warehouse of Camerons; that the rooms were of the proper size and he purchased one for his drawing room and one for his entrance hall. Five photographs of his reception hall with the panelling installed were admitted in evidence and marked "collective illustrative exhibit 2" and seven photographs of the drawing room with the panelling installed were admitted in evidence and marked "collective illustrative exhibit 3." The witness stated that he submitted the plans of his house to Camerons and additions were made to adapt the panelling to his house; that two new corner niches or cabinets were built. Notations in ink designating the new parts were made on the photographs.

The witness testified further that he then went to the place of business of J. M. Botibol and saw another room which he purchased. A photograph of the room in his house containing that panelling was marked "illustrative exhibit 4." The witness explained that the door appearing in that photograph was purchased from Camerons. The witness then produced five photographs of his sunroom containing the imported panelling and they were admitted in evidence and marked "collective illustrative exhibit 5." He explained that the panelling for that room was purchased from Botibol; that the two pilasters or columns in the photographs, one doorjamb and the facing on one door were newly constructed but all the other portions consisted of old panelling which he purchased. The new portions were identified by notations in ink on the photographs. The witness said that the door to which the new facing was attached was purchased from Camerons and he believed all of the flooring and panelling which he purchased were artistic antiquities produced prior to 1830.

The next witness called by the plaintiff was Mr. Bertram Teitelbaum. He testified that he is the head art director for Warner Bros. Pictures and has charge of all sets for all of their pictures, both interior and exterior, and that he is responsible for their artistic merits and has charge of all permanent construction; that prior to his employment with Warner Bros. Pictures he was chief designer for the Los Angeles County Department of Architecture; that he has made studies of different types of architecture, furniture, interior finishes of houses, etc., for the purpose of informing himself as to the representative types of certain periods; that he was commissioned by Mr. Warner to be his official representative in the construction of his new residence; that when he received information from Mr. Warner of the purchase of the panelling in Europe, he stopped work on the framework of the house until he received the diagram of the new panelling and flooring; that the articles received from abroad were installed in the house, the dimensions of the rooms being made to accord with the size of the panelling. The witness marked his initials on the photographs in evidence for the purpose of indicating the portions of the interior of the rooms which he believed were new. His marks conform to those made on the photographs by Mr. Warner. The witness testified further that in his opinion the panelling and flooring were of the highest artistic nature.

The next witness called by the plaintiff was Mr. Roland E. Coate, the architect who designed the house for Mr. Warner. He testified that he graduated from the College of Architects at Cornell University in 1914 and has since followed his profession as an architect; that he

is a member and fellow of the American Institute of Architects; that he prepared the plans for the home of Mr. Warner in Beverly Hills and supervised the construction; that he supervised the installation of the panelling and flooring covered by the importations in this case and is of the opinion that the merchandise is of high artistic merit; that the carving on the panelling in the drawing room is the type known as the Grinling-Gibbon school which period was in vogue in England in the seventeenth century; that the panelling in the sun-room is of the Chippendale school in the Gothic manner which was in vogue in the seventeenth century; that the work obviously was executed by an artist.

The plaintiff produced also, as exhibit 6, the deposition of Lionel Levi, who signed the consular invoices, numbers 4476 and 9862 (covered by entries 7517 and 8936, protest 957857–G) relating to the pine-panelled room sold by Camerons, and the deposition of Mr. J. M. Botibol who was the shipper of the merchandise covered by consular invoice 10032 (covered by entry 9060, protest 957857–G). The plaintiff also introduced, as exhibit 7, the deposition of Mr. Maurice Chalom, the shipper of the merchandise in consular invoices 2689 (covered by entry 7747, protest 957857–G) and 9161 (covered by entry 11499, protest 959572–G).

Mr. Levi testified that he had been in business for 30 years buying and selling antiques and works of art; that he is familiar with the merchandise covered by consular invoices 7517 and 8936 which he originally saw in the house at 17 Arlington Street, Picadilly, London, before the mansion was pulled down; that he purchased the rooms from the owners; that the taking down, stripping of paint, and wax polishing cost £71 10s. 0d.; that in his opinion the panelling was made about 1740; that the portion of the shipment which was over 100 years old was valued at £1,800 0s. 0d.; that the renovating and readaption to meet Mr. Warner's requirements cost £180 0s. 0d. and the polishing cost £20 0s. 0d. The invoice item for new parts costing £1,127 0s. 0d. was described by the witness as follows:

12 (c) Adapting the panelling to the existing doorway; supplying a new door dressing for entrance to the sun room and an architrave for a large window; new window dressings with carved spandrel and arches on either side of the chimney-piece; mahogany sliding doors glazed with plate glass; new drops added to over-mantel; four angle niches with carved archivolt and carving on the semi-circular head with three shaped shelves and spandrel panel over; to apron piece dado and skirting to be part of the original room; to carving in niche heads; to door dressings for the drawing room with pedimented head, otherwise similar in detail to the double door in the drawing room; to two extra double door dressings as detailed in dining room; three pairs of mahogany doors for the above; to pine carved door dressing with a pedimented head and carved frieze supported on fluted Corinthian columns with carved capitals for hall; four pine turned fluted columns with carved capitals.

The merchandise described by the witness appears to have been imported in two shipments covered by entries 7517 and 8936. The invoice covered by entry 7517 describes the merchandise as follows:

A Carved Pine Panelled Room taken out of Arlington
Street, St. James's, S. W. Name of Producer:—
Unknown England 1740. Acquired from Realty
Trust Co., Ltd., 34, St. James's Street, London
S.W.1. 11/12/30_____ £1,800.0.0
Cost of renovations which includes the re-adaption and
polishing_____ 200.0.0
Six Export Packing Cases_____ 20.0.0
Labour in packing_____ 10.0.0

The invoice covered by entry 8936 describes the merchandise as follows:

Remaining Portion of Carved Pine
Panelled Room, taken out of Arlington Street, St. Jame's
S. W. Name of Producer:—Unknown
England 1740
Acquired from: Realty Trust Co., Ltd., 34 St. James's
St., London, S. W. 1 11/12/30_____ £350.0.0
Cost of New Parts to above and renovations, which
includes the re-adaption and polishing_____ 1,127.0.0
Seven Export Packing Cases_____ 25.0.0
Labour in Packing_____ 7.10.0

The only parts of these shipments which were entered free of duty under paragraph 1811 were those valued at £1,800 0s. 0d. plus packing and cases covered by entry 7517 and £350 0s. 0d. plus packing and cases covered by entry 8936. It appears from the record that Mr. Levi failed to mention in his deposition the portion of the panelled room covered by consular invoice 9862, entry 8936, valued at £350 0s. 0d. At the trial before the court in San Francisco on October 17, 1940, when exhibits 6 and 7 were offered in evidence, the parties agreed to the following stipulation in open court:

Mr. TUTTLE. I offer to stipulate with the Government counsel that if Lionel Levi were called as a witness he would testify as follows: That on August 13, 1940, he appeared before Henry E. Stebbins, Commissioner at London, and answered certain interrogatories contained in a commission issued by the United States Customs Court in respect to Protests 957857–G/27197 and 959572–G/27668, and that in his answer to Interrogatory 12 he failed, through oversight, to account for the item appearing on Consular Invoice 9862, reading as follows: "Remaining portion of carved pine-panelled room, etc. £350.0.0", representing the balance of the carved Pine panelled room covered by Consular Invoice 4476 and valued at 1800 pounds, and that therefore the value of that portion of the carved pine panelled room, which he believes was made about the year 1740, was 1800 pounds, plus 350 pounds, or a total of 2150 pounds.

Mr. WEEKS. I will concede he will so testify, but I will not concede it is true. I am making that concession on the basis of the affidavit in my possession.

Judge EVANS. It will be so stipulated.

Witness J. M. Botibol testified in his deposition in exhibit 6 that he is an art dealer and has been engaged in the business for 40 years; that he shipped the merchandise covered by consular invoice 10032 (entry 9060, protest 957857–G) to Mr. J. L. Warner of Beverly Hills, Calif., and is familiar with the contents of that shipment; that the commodity consists of a room acquired from George Ray, Strourbridge, April 29, 1928; that the room was removed from the house under his supervision by Mr. J. R. Thomas; that nothing was done to it from the time of its removal until it was shown to Mr. Warner; that in his opinion, based on the construction of the room and the quality of the carving thereon, the room was produced in 1760. When asked to state the cost of the renovating, readaption· and polishing, the witness said:

The room was extended and that would cost £375. The waxing for the new part would cost £25. (answer to interrogatory 11-b).

The invoice description of the merchandise in that shipment is as follows:

A Georgian Carved Pine Pannelled Room.
Name of Producer Unknown.

| | |
|---|---|
| England 1760. Acquired from George Ray, 7, High Street, Stourbridge, 20th, April 1928 | £1,800. 0. 0 |
| Cost of new parts for above & Renovations which includes the re-adaption & Polishing | 400. 0. 0 |
| Two Export Packing cases | 30. 0. 0 |
| Labour in packing | 15. 0. 0 |

The invoice covers some furniture also, but that is not involved in this case.

Mr. Maurice Chalom testified that he is an interior decorator, a dealer in antiques, a student of artistic objects and also a writer on those subjects; that he has been engaged in such work for 22 years; that he studied in the Boule Professional Art School in Paris for 3 years; that since that time he has directed the work of designers and interior decorators in the preparation and repairing of antiques and objects of art; that his interiors have been published in many books which are in the national libraries throughout the world and which are used in many art schools; that he sold Mr. J. L. Warner the merchandise described on the consular invoices 2689 (covered by entry 7747, protest 957857–G) and 9161 (covered by entry 11499, protest 959572–G); that the merchandise was in the possession of the firm of S. Chalom from the time it was removed from the houses in France, in which the articles were originally installed, until the time the goods were sold to Mr. Warner; that he personally examined the merchandise at the time of removal from the original houses and was

fully acquainted with the character thereof. The witness stated that he was familiar with the items described on the invoices as follows:

Consular invoice 2689, entry 7747

| | |
|---|---|
| 43 Panneaux parquet marqueterie Empire et 6 Marceaix frise | $200 |
| Reparation | 80 |
| 22 Panneaux parquet Versailles, 50 Moreaix frise et 2 bottles lames | 100 |
| Reparation | 40 |

Consular invoice 9161, entry 11499

| | |
|---|---|
| 1 lot parquet Varsailles compronant | |
| 13 panneaux, 8 mouchoirs, 30 frises | |
| 1 botte fausses languettes et Om45 | |
| de bois faconne dur | $280. 00 |
| Reparation | 70. 00 |

When asked to describe the items designated as "reparation," the witness said:

The work of reparation consisted of cutting to measure the panels to fit the plans sent by Mr. Warner, and of also adding some material to the panels for the same purpose. The total of these additions and changes did not affect more than ten per cent of the total area of the panels. I estimate that one-half of the cost of the above reparation was for adding new material and the other half for taking off the old material.

When asked for his opinion as to whether or not the articles were produced prior to 1830, the witness gave the following answer:

In my opinion, the above merchandise, in their condition prior to the "reparation", were produced before 1830. My reasons for this opinion are: These merchandise were taken from houses located in France, and I personally saw these merchandise being removed from these houses. After this they were sent to the firm of S. Chalom, where they became part of the firm's merchandise. I know from my studies and researches, that the parquetrie floor, described in the first item above, was given by Napoleon I, before 1830, as a present to his brother Joseph, and installed in Joseph's house in Paris. This parquetrie floor was removed from this house in my presence, and thereafter sold to Mr. Warner, after which the above reparation was done. The rest of the merchandise described above was installed in various chateaux in France, and was removed from these chateaux in my presence. I know from my researches and studies that all of these last mentioned merchandise were produced in the periods of Louis XIV and Louis XV, and consequently were produced a long time before 1830, and the above mentioned reparations on them were performed after they were removed from these chateaux, as above described.

Counsel for the defendant filed objections to some of the questions taken by commission on the ground that the witnesses were not qualified to give an opinion as to antiquity of the articles and on the further ground that it is immaterial whether the articles were produced prior to 1830 because there were alterations and reparations made thereon after they were purchased by Mr. Werner and before shipment. The objections are overruled with exception granted to defendant.

We find from the uncontradicted evidence that the panelled rooms and flooring herein involved were artistic antiquities produced prior to the year 1830 at the time they were purchased by the plaintiff and the only question for consideration is whether the alterations and changes made upon those antique articles to make them adaptable for use by the plaintiff in the house he was building were sufficient to cause the shipments to be characterized as articles of modern creation.

The facts in this case are similar to those in *Tobias & Co.* v. *United States*, 51 Treas. Dec. 150, T. D. 41986, wherein the court passed upon an antique room which, prior to shipment, had been fashioned in part to fit the importer's premises, 17 or 18 per centum of the importation being of modern construction. The court held that the antique portions of the shipment were free of duty as artistic antiquities and that the modern portions were dutiable as manufactures of wood. The court said:

In this case we hold it is within the contemplation of the law that whatever is antique is free of duty and whatever is not subject to that classification must pay duty. That would admit free of duty what is claimed by the plaintiffs as the antique portion of this importation.

In the case of *Ernest L. Brothers* v. *United States*, 64 Treas. Dec. 53, T. D. 46520, the importation consisted of an antique panelled room. There was a charge on the invoice for cleaning off old paint and waxing the surface of the wood, amounting to £60. The collector returned the antique panels free of duty but assessed duty on the labor charge for cleaning off the old paint and waxing. The court held that such charge was for a minor repair and was not subject to duty as modern additions. The plaintiff in this case claims that under the rule in *Ernest L. Brothers* v. *United States, supra,* the charge for "cost of renovations which includes the re-adaption and polishing," amounting to £200 0s. 0d., on the invoice from Cameron's covered by entry 7517, is not dutiable. We cannot agree with this contention. Mr. Levi testified that the charge for £200 0s. 0d. related to the cost of renovation and readaption of the panels for the room, amounting to £180 0s. 0d., and the cost of polishing, amounting to £20 0s. 0d. Manifestly this is not a charge for labor similar to removing old paint and waxing to protect the antique portion of the room such as is required to put the antique in its original condition. Mr. Levi testified that the charge for dismantling the room, stripping it of paint and wax polishing amounted to £71 10s. 0d. That charge is not a separate item on the invoice. It is evident that such charge was included in the amount which Mr. Warner paid for the original room in the condition in which he purchased it, that is, it was included in the price of £1,800 0s. 0d. plus £350 0s. 0d., or £2,150 0s. 0d., for the entire panelling of the room. All the work done on the antique

panelling of that room, which was charged separately on the invoice, constitutes something more than minor repairs to the antique such as we held free in *Rorimer Brooks Studios* v. *United States,* 66 Treas. Dec. 14, T. D. 47153, and we are of opinion that the collector committed no error in assessing duty thereon.

The same rule is applicable to the importations from S. Chalom of Paris. Witness Chalom testified that the "work of reparation consisted of cutting to measure the panels to fit the plans of Mr. Warner, and of adding some material to the panels for the same purpose." Clearly that work is not minor repairs.

We hold that the merchandise having the following invoice description, and the cases and packing relating thereto, are free of duty under paragraph 1811, and, as to said merchandise, the protests are sustained:

Entry 7517, protest 957857–G

A Carved Pine Panelled room taken out of Arlington Street, St. James's, etc_____ £1, 800. 0. 0

Entry 8936, protest 957857–G

Remaining Portion of Carved Pine Panelled Room, taken out of Arlington Street, St. James's, etc_____ 350. 0. 0

Entry 9060, protest 957857–G

A Georgian Carved Pine Panelled Room. * * * Acquired from George Ray, 7, High Street, Stourbridge, etc_____ 1, 800. 0. 0

Entry 7747, protest 957857–G

43 Panneaux Parquet marqueterie Empire et 6 Marceaix frise_____ $200.
22 Panneaux parquet Versailles 50 Moreaux frise et 2 bottes lames_ 100.

Entry 11499, protest 959572–G

1 lot parquet Versailles compronant 13 panneaux, 8 mouchoirs, 30 frises 1 botte fausses languettes et Om 45 de bois faconné dur_____ 280.

As to all other items the protests are overruled. Judgment will be entered accordingly.